WALTER D. STEWART *vs.* REED V. JEWETT.

Penobscot.        Opinion May 8, 1933.

*Thompson and Ball,* for plaintiff.
*James M. Gillen,* for defendant.

SITTING: PATTANGALL, C. J., DUNN, STURGIS, BARNES, THAXTER, JJ.

BARNES, J.    After verdict for the plaintiff (damages $4,600.00, for injury suffered in an automobile accident), defendant brings his case to this Court, on motion to have the verdict set aside as not just, and because the damages are excessive.

It is a guest case, plaintiff an invited passenger, defendant driving his automobile when the accident occurred.

The time was October 11, 1931, a little before noon of a fair day, and the place, outside the gutter of a third-class highway, fifteen feet wide, in the town of Crawford.

Three passengers occupied the rear seat of the automobile, plaintiff in the middle; and another passenger sat at the driver's right. On descending ground, moving at moderate speed, defendant overtook and passed another automobile. Upon turning to his right to regain the better part of the travelled way, defendant lost control of his machine, and the trip ended with the automobile broken, after collision with an apple-tree on the roadside, fifty feet or more beyond the place where defendant passed the other car.

Parties and witnesses are estimable men, of excellent reputation. Plaintiff testified, "we shot over to the right hand side of the road in front of the other car, travelled along the ground side of the ditch until we brought up on the tree . . . It seemed as tho it went across the front of the other car at a very fast rate."

One of the witnesses, who was seated in the rear of the automobile gave the same testimony: "It swerved slightly to the left and then again to the right and run off the road."

The defendant testified: "I don't believe I was going over twenty miles an hour when I was behind his car because his car was going very slowly; but I speeded my car up and in its movements from the time I passed that car until I went off the road, the momentum increased some . . . I wished to pass. I turned to the left. The Ford car was clinging pretty closely to the center of the road. I turned to the left and I approached the side of the road on the south, and, as I approached that side of the road, my car gave way on the left. I felt my car giving way, and fearing an accident, I turned my wheel to the right, bringing myself into the middle of the road. I swerved my wheel too far, and as a result I moved very close to the side of the road, and would have gone off then except that I turned my wheel again and came too far over to the south side, or the left hand side, as we proceeded; and I again swerved my car.

"You will remember that from where I passed the Ford it was a downgrade, so that my car was probably increasing its speed as I moved along . . . I went off the road almost directly in front of that stone" (indicating stone at the right of the road).

There is no testimony with regard to defendant signalling that he was about to pass the driver ahead, and, "clinging pretty closely to the center of the road," except this: "And do you remember whether or not you blew your horn for him to get over?" Answer "Yes."

On this evidence it was for the jury to balance the probabilities and determine from facts found and inferences logically drawn whether the defendant had exercised the care, and the degree of care, requisite to the performance of his duty to his invited guests, in the operation of the automobile.

The jury found the defendant remiss. In legal phrase, they found him negligent; and assessed damages.

The injury proven was to the larger of the leg bones of the left leg, near the upper end.

The testimony is indefinite and confusing. To the physician who took the X-ray pictures they "give the impression of having been hit by something and the outer layer of bone tissue broken in. * * * pushed down and in rather than up, * * * the surface of the bone, the outer layer, has been injured." The physician testified, "A piece of this bone was broken, the upper end of the big bone of the lower leg."

Plaintiff was perhaps sixty-four years of age at the time of the accident. For about forty years he had been in the Railway Mail Service, earning $2,600.00 a year.

He was confined to his bed for nine weeks; after some further time, moved about with the aid of crutches, then of a cane till the next January.

He does not assert that he suffered acute pain, rather: "I say 'ached' as distinguished from 'pain'. That is not as severe."

On May 21, 1932, he returned to the Bangor-Calais run in the Mail Service. When asked whether plaintiff would in future be in pain at times, the doctor replied "Possibly, if he gets over-tired."

It is agreed that wages lost, for time out, amounted to $1,589.84 Cash disbursement in course of recovery                166.39 To the sum of these two items, the jury added $2,843.77. Such a sum seems clearly in excess of what should have been regarded as remuneration for suffering, loss of future earnings and other proper items of damage not enumerated.

The jury would have been justified in assessing one thousand dollars instead of the figures last given.

The motion must be granted unless, within thirty days of date hereof, plaintiff shall remit so much of the verdict as exceeds the sum of $2,756.23.

*So ordered.*